UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 06 2015

DAUM GLOBAL HOLDINGS CORP.,
                              Petitioner,

—v—

YBRANT DIGITAL LIMITED et al.,
                              Respondents.

13-CV-3135 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

On February 26, 2014, April 18, 2014, and May 6, 2015, the Court confirmed three separate arbitration awards totaling approximately $35 million in the above-captioned case. *See* Dkt. Nos. 18, 19, 28, 29, 40 and 41. Daum Global Holdings Corporation ("Petitioner") now seeks a Turnover Order pursuant to Federal Rule of Civil Procedure 69(a) and New York Civil Practice Law and Rules ("CPLR") § 5225(a) compelling Ybrant Digital Limited and other Ybrant companies ("Respondents") to turn over their stock certificates in a variety of wholly-owned subsidiaries to satisfy the awards. Petitioner also seeks discovery in connection with its attempts to execute on the judgment. *See* Dkt. No. 43. For the reasons articulated below, Petitioner's motion is granted in part and denied in part.

I.   BACKGROUND

On September 24, 2014, an International Chamber of Commerce arbitration tribunal based in Singapore issued a final award of $33,547,883 plus interest against Respondents in favor of Petitioner. *See* Pet. Br. Ex. A2 (the "Final Award"). Subsequently, Petitioner sought to confirm that award and two other related awards in this Court pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ("New York Convention" or "Convention"), implemented and codified at 9 U.S.C. § 207. On February

26, 2014, April 18, 2014, and May 6, 2015, the Court confirmed three awards totaling approximately $35 million. *See* Dkt. Nos. 18, 19, 28, 29, 40, and 41. The awards required Respondents to pay Petitioner the amount of the judgment within 15 days of notification of the award or within 20 days of written demand by Petitioner. Final Award ¶ 213. If Respondents failed to make timely payment, the award provided that Petitioner would be entitled to receive certain shares held in escrow (the "Escrowed Shares"). *Id.* To date, Respondents have not made payment, so Petitioner has acquired possession of the Escrowed Shares. Pet. Br. at 5. Because the value of the Escrowed Shares is considerably less than the full value of the judgment, Petitioner filed the instant motion to execute upon the remaining portion of the confirmed awards. *Id.*

## II.  DISCUSSION

The New York Convention, binding on federal courts pursuant to 9 U.S.C. § 207, provides that arbitration awards shall be enforced "in accordance with the rules of procedure of the territory where the award is relied upon." New York Convention art. III. A federal court has "inherent power to enforce its judgments," *Peacock v. Thomas*, 516 U.S. 349, 356 (1996), including arbitration awards that have been confirmed pursuant to 9 U.S.C. § 207. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Nos. 11-CV-1590 (LTS) and 11-CV-8726 (LTS), 2015 WL 57097, at *1 (S.D.N.Y. Jan. 5, 2015); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 386-87 (S.D.N.Y. 2003). Under Federal Rule of Civil Procedure 69(a), a federal court enforcing a money judgment will apply the "procedure on execution . . . of the state where the court is located." Fed. R. Civ. P. 69(a). In New York, enforcement of money judgments is governed by CPLR § 5225. That section provides:

2

> Upon motion of the judgment creditor . . . where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

CPRL § 5225(a). A debtor can be ordered under CPLR § 5225(a) to turn over any personal property in its possession, including assets located outside the state. *See Gryphon Dom. VI, LLC v. APP. Int'l. Fin. Co., B.V.*, 836 N.Y.S.2d 4, 14 (App. Div. 2007).

The instant action involves a dispute as to the proper interpretation of the Final Award. Respondents argue that by taking possession of the Escrowed Shares, Petitioner forfeited its rights to the considerable difference in value between the Escrowed Shares and the Final Award. Petitioner, on the other hand, argues that the two forms of relief are cumulative and that it is entitled to both the Escrowed Shares and the value of the Final Award.

Respondents further claim that because this dispute involves interpretation of an arbitration award, it must be decided in arbitration. Resp. Br. ¶¶ 22-23. To the contrary, 9 U.S.C. § 207, Federal Rule of Civil Procedure 69(a), and the inherent power of federal courts to enforce their judgments give federal courts the authority to enforce arbitration awards. *See Universitas Educ., LLC v. Nova Group, Inc.*, Nos. 11-CV-1590-LTS, 11-CV-8726-LTS, 2015 WL 57097, at *1 (S.D.N.Y. Jan. 5, 2015). In doing so, a district court is entitled, and indeed obligated, to interpret the award. *See Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 110-11 (2d Cir. 1993) (affirming the district court's interpretation of an arbitration award). Only when an award is internally contradictory or so ambiguous that neither party can "advance[] a clear and compelling interpretation of the award" must a proceeding to enforce an arbitration award be remanded back to arbitration. *Kallen v. Dist. 1199, Nat'l Union of Hosp. & Health*

3

*Care Emp., RWDSU, AFL-CIO*, 574 F.2d 723, 726 (2d Cir. 1978) (quoting *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516*, 500 F.2d 921 (2d Cir. 1974)). That is not the case here.

As to the substance, Respondents oppose, arguing that Petitioner "elected to retake [the Escrowed Shares] in lieu of collecting the monetary award set forth in the final arbitration Award." Resp. Br. ¶ 4. In support of that position, Respondents point to language in the Final Award that the Escrowed Shares "are available to [Petitioner] under the Escrow Agreement if [Petitioner] is not paid the Earnout Payment Amount by . . . [Respondents]." Resp. Br. ¶ 15 (quoting Final Award ¶ 176). Petitioner counters that the Escrowed Shares are a cumulative remedy intended as security for payment of the Final Award. Pet. R. Br. ¶ 7. Petitioner also estimates the value of the Escrowed Shares to be approximately $6.4 million, far less than the $35 million total value of the judgments in their favor. *See id.* ¶ 9 (noting that the Escrowed Shares represent 44% of a company worth approximately $14.5 million).

In interpreting an arbitration award, a court should look to the plain language of the award. *See Chios Charm Shipping Co. v. Rionda*, No. 93-CV-6313 (SS), 1994 WL 132141, at *3 (S.D.N.Y. Apr. 12, 1994) (citing *Folkways*, 989 F.2d at 110). Respondents' proposed interpretation of the Final Award is not supported by the text. The Final Award "[o]rders and declares that in the event of [Respondents] not making payment to [Petitioner] . . . [Petitioner] is entitled to have the Escrowed Shares distributed to it." Final Award ¶ 213. Nowhere does the award indicate that taking possession of the Escrowed Shares is in lieu of full payment or satisfies the entirety of the judgment. In fact, the Final Award specifically describes Petitioner's entitlement to release of the Escrowed Shares as cumulative. Final Award ¶ 176. ("[Petitioner's] entitlement to the release of the Escrowed Shares is . . . cumulative in the sense

4

that remedies are available to it under the Escrow Agreement if [Petitioner] is not paid the Earnout Payment Amount.").

Furthermore, the Final Award specifically provides that the purpose of the Escrowed Shares is to "ensure satisfaction by Buyer of obligations" to pay the arbitration award. Final Award ¶ 173. Treating the Final Award's provisions as non-cumulative defies that language by creating a perverse incentive for Respondents, who assert that they can refuse payment of the $35 million judgment and limit Petitioner's recovery to the far lesser value of the Escrowed Shares. Under Respondents' interpretation, placing the shares in escrow does not incentivize payment of the final judgment; to the contrary, it encourages Respondents to refuse payment of the full judgment. Adopting an interpretation of the Final Award giving Respondents the ability to so easily and dramatically limit Petitioner's recovery is contrary to the language describing the purpose of the Escrowed Shares.

The award is also clear, however, that Petitioner is not entitled to both the Escrowed Shares and full payment of the judgment. As noted above, the Final Award provides that the purpose of the Escrowed Shares is to "ensure satisfaction by Buyer of obligations" to pay the arbitration award, not to penalize Respondents for failure to make timely payment.[1] Final Award ¶ 173. As the arbitrators note in their Award, "[i]f . . . [Respondents] were to pay the Earnout Payment Amount . . . [Petitioner] would have no entitlement to the Escrowed Shares."). Id. ¶ 176. This language demonstrates that while taking possession of the Escrowed Shares upon Respondents' default is a cumulative remedy in that it can be done in conjunction with executing on the remaining value of the award, Petitioner may not recover the Escrowed Shares in addition to the full $35 million judgment (plus applicable interest). This interpretation is further bolstered

---

[1] Instead, the penalty for late payment is Respondents' obligation to pay interest. Final Award ¶¶ 179-190.

5

by the clear requirements of New York law, the law applied by the arbitration panel, *see* Final Award ¶ 7, under which "liquidated and actual damages are mutually exclusive remedies." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004) (citing *X.L.O. Concrete Corp. v. John T. Brady & Co.*, 482 N.Y.S.2d 476, 479 (App. Div. 1984)).

Thus, upon Respondents' default, Petitioner is entitled to the value of the Final Award, minus the value of the Escrowed Shares currently in its possession. At the current time, Respondents have failed to make required payments under the Final Award. Under paragraphs 173, 176, and 213 of the Final Award, Petitioner may retain possession of the Escrowed Shares and execute on the remaining value of the judgment. The Court therefore grants Petitioner's request for a Turnover Order.

Petitioner further requests that the Court "grant other and further relief, including an order authorizing discovery." Pet. Br. at 12. At the current time, the Court finds this request to be premature and denies it. However, if Respondents continue to refuse payment, Petitioner may seek appropriate relief from the Court.

### III. CONCLUSION

For the foregoing reasons, the Petitioner's petition is GRANTED in part and DENIED in part. Petitioner's request for discovery is denied. However, Respondents are ordered to either (1) pay Petitioner enough money to satisfy the Judgment plus applicable interest, minus the current value of the Escrowed Shares; or (2) deliver to a designated sheriff or Marshal for sale stock certificates in their possession or control of sufficient value to satisfy the Judgment plus applicable interest, minus the current value of the Escrowed Shares.

Stock certificates subject to this Order include, but are not limited to, stock in the companies outlined in pages 5 to 6 of Petitioner's Brief in which Ybrant Digital has a 100% ownership interest, as well as Ybrant Media's stock in Lycos.

This resolves Dkt. No. 43.  The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: October 6, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge